Filed 12/4/13  P. v. Kates CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B244733 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA054225) |
| v. | |
| TYRONE KATES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daviann L. Mitchell, Judge.  Affirmed.

Ron Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Following lengthy plea bargain negotiations, defendant Tyrone Kates, represented by counsel, pled no contest to one count of making criminal threats (§ 422)[1] and admitted he had suffered one prior conviction within the meaning of the Three Strikes law. In return, the prosecution dismissed the remaining sentencing allegations. As agreed, the trial court imposed a four-year sentence and awarded the appropriate custody credits.

In this appeal, defendant contends that his "plea and sentence should be set aside because it was coerced" by judicial involvement in the plea bargaining process. We are not persuaded. California does not bar judicial participation in the plea bargaining process. The trial court may properly encourage the parties to attempt an informal resolution as long as it remains impartial. In this case, the trial court did no more than appropriately participate in the negotiations in order to help the parties reach a mutually agreeable disposition of the case. We therefore affirm the judgment.

# FACTUAL AND PROCEDURAL BACKGROUND

The information charged defendant with one count of making criminal threats and alleged that he had suffered two prior convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), had incurred two prior serious felony convictions (§ 667, subd. (a)(1)) and had served six prior prison terms (§ 667.5, subd. (b)).

A jury trial was conducted before Judge Akemi Arakaki. The jury deadlocked, nine to three in favor of guilty. The trial court declared a mistrial.

---

[1] All statutory references are to the Penal Code.

(Before trial, Judge Arakaki had granted the People's motion to strike one of the two Three Strikes prior convictions.)

Several months later, the case was assigned to Judge Daviann L. Mitchell for retrial.[2] Proceedings commenced on August 21, 2012. The prosecutor indicated that while defendant faced a maximum sentence of 16 years, he (the prosecutor) had extended an "offer" of nine years. The court explained to defendant:

> "I want to make sure that before we order a jury for tomorrow, this is, in fact, what you'd like to do; so I just want to make sure that everything's on the record and that you understand that.
>
> "*And if you tell [your attorney] you want to go forward, we'll certainly do that*, and I will assure you to the best of my ability you will get a fair trial, but I'd just like in my own mind to make sure that you're clear and comfortable with everything before we go ahead and call our jury. . . .
>
> "I don't know the details of your case. All[] I know is what [is alleged in the information and set forth in your probation report]. . . . I understand there was a 9-to-3 split on your trial last time.
>
> "What I can tell you -- and [your attorney] will likely share this with you -- often retrials benefit the prosecution, and I'll tell you why. They basically had a dry run. They typically talk to the jurors and find out where the weaknesses were in their case and they sew those all up for the next trial.
>
> "They also have the transcripts; so they know what the defense is and the tactics the defense may be taking . . . in [the next] trial so there's nothing hidden anymore. When an attorney prepares for trial, the defense isn't going to disclose what their defense is because his goal is to get an acquittal, and he is going to fight as a vigorous advocate to benefit you.

---

[2] All subsequent references to the trial court refer to proceedings conducted before Judge Mitchell.

3

"But now that that's all been done, all the cards are on the table; so you're kind of at a disadvantage where you were the first time because who knows what's going to actually come out, but now the People know fully what to expect, [defense counsel] knows fully to expect as do you.

"[In the prior trial], nine jurors voted against you. Looking at your record and your history, it would be very difficult for me to consider striking a prior should [defense counsel] ask me to do so, but I can't prejudge it. . . .

"[But] [i]n looking at your record and looking at the probation report, . . . you're not an ideal candidate for a situation like that because of your history.

"They're offering you almost half of what your maximum exposure is. The only thing I can do is go into this trial and make sure that I explain everything to you and make sure you fully understand it and that you have discussed it with [defense counsel].

"I know both of these lawyers. They have tried cases before me, and I have worked with them when I was an attorney. They're both excellent lawyers. [Defense counsel] is an excellent advocate for his client, but he cannot pull a rabbit out of a hat, and what I want you to do is go in with your eyes wide open.

"*As long as you understand everything, I have no problems, because at the end of the day if you tell me, 'I want my trial,' I will do everything I can to assure you a fair trial.* I can't control what the jurors do. The only thing I'm in charge of is sentencing if it's deemed to be appropriate.

"It's going to be the 12 people in the box who make a decision on how they want to vote, 'guilty' or 'not guilty.' That decision is not mine. If it is rendered a guilty verdict, the only thing I have to do is worry about sentencing, and *at the end of the day if you have said, 'I want to roll the dice. I think I have a better chance to go before the jury,' I'm going to give you that right to do that.*

4

". . . . *If* you're ultimately convicted – in looking at your record, you would likely get the maximum sentence or something close to that . . .

". . . . I want to make sure that you've completely discussed this with [defense counsel], and if there was a manner in which you can resolve this case without going to trial, there's a benefit of recognition of responsibility early on.

"I recognize [that] you've already been through trial once; however, if you choose not to go through trial again, it's always beneficial for the courts as well as the victims because they have to be called in to testify, and I don't know if counsel's intending to call your old victims in or if it's even relevant, but we'll have those motions this afternoon if it's deemed to be appropriate.

"*But what I want to do is make sure that you completely understand everything and that you've considered it and decide whether you want to make a counteroffer or if you want to go to trial.* If you'd like to speak with [defense counsel], I will be more than happy to give you the opportunity to do that, and we'll have our pretrial motions this afternoon [because] I don't think we have any jurors for today, but if I get to the point where I order jurors and bring them in, all bets are off. . . .

"Would you like to talk to [defense counsel] to see if there's something that you are comfortable living with and that you can present to the prosecution and he can take to his supervisor to see if you can resolve this, or would you simply want to come back this afternoon for your pretrial motions? It's up to you. I'll give you the time if you think you would like to do that." (Italics added.)

Defendant conferred with defense counsel. Defense counsel informed the court that the Prosecution had rejected a defense counter-offer that sought only probation. The court stated that it would not have accepted that disposition given the nature of the charge and defendant's criminal history and explained that it would accept "nothing less" than a midterm sentence. The court also explained:

5

"I'm not insisting on the strike or adding additional time, but that is something that [defendant] would need to consider." Proceedings then adjourned for lunch.

Later that day, the trial court asked defendant: "You're intending to go forward?" Defendant responded: "Yes." The trial court heard and ruled on a number of pretrial evidentiary motions. The trial court discussed scheduling issues pertaining to commencing trial the next day and then stated:

> "And then with respect to [a possible] disposition, there is no resolution, and if there is a change, we have to know before four o'clock -- I'll tell you that; otherwise, we're just going to go through tomorrow, because I don't want to order our jury panel and then have their -- the defendant suddenly say tomorrow at 1:45, 'I want the disposition.'

> "Sir, if there's any change in your mind based on the rulings that have been made because, you know, often you have a trial, you really don't know how things are going to work out. Every judge is different. Every judge does what they think is the right thing under the circumstance, and I've made my rulings the way I think are appropriate, and that may affect your desire to try to resolve this case."

Court adjourned for the day without further discussion of a disposition.

The next day, the trial court ruled on additional evidentiary questions. It explained that it had not read the reporter's transcript of the first trial; that it had not reviewed the rulings made in the first trial; and that it was not bound by the rulings from the first trial. The court explained: "I listen to what both sides have to say and rule according to what I believe the law dictates that I should do."

After a recess in the proceedings, the trial court stated to defendant: "I do believe you had the opportunity to talk to your lawyer, and I believe, if I understand correctly, the place that everybody left off was midterm which I

6

insisted on on count 1 times two by admitting the [prior] which would be four years at 80 [percent]; is that correct?" The prosecutor responded, "That's the offer the People are extending." Defense counsel told the trial court that defendant had made a counter-offer of 32 months, comprised of the low base term, doubled pursuant to the Three Strikes law, but that the People had rejected it, insisting that defendant receive the midterm (a 48-month sentence).

The trial court told defendant:

> "*I'm more than happy to call that jury up*, and they're all waiting for us downstairs. You're arguing over 16 months. . . . And you have every right to do that, and *I'm going to give you the opportunity to have your trial*. You know what your exposure is. We talked about it yesterday. We talked about your probation report. It is not a glowing report, and they are finding no mitigating circumstances in this case because your crime history has dated back to 1976." (Italics added.)

After reading from defendant's probation report, the trial court explained that the probation department recommended state prison and that defendant was not "even eligible" for probation. As to the prosecutor's offer, the court stated:

> "We're now down to arguing over 16 months. *I'm more than happy to call the jury up, and I just need a go-ahead from you.* Only you will live with that decision, because once the jury comes in, it's off the table . . . . We're talking a year and a month extra of actual time to be served, I think, approximately." (Italics added.)

Defense counsel and the trial court discussed defendant's entitlement to presentence custody credit. The trial court told defendant that he would receive 654 days of custody credit, and that if he accepted the People's offer of 48 months, he would have to serve another 806 days in custody prior to his release. The trial court stated, "It's less than two years. Again, it's up to [defendant]. I just want

him to make a decision that he's comfortable with. [¶] I need a decision, sir. I really want to move forward. I have a jury that's been waiting since 1:30."

Moments later, defense counsel told the trial court that defendant would accept the People's four-year offer. Defendant completed and signed a Felony Advisement of Rights, Waiver, and Plea Form. Among other things, the form recited that defendant was "freely and voluntarily" entering his plea and that "[n]o one has made any threats, used any force . . . or made any promises . . . in order to convince [him] to plead." The trial court asked defendant, "after additional discussions with counsel and re-evaluation of your case, at this point you're willing to take the four years that the People are offering you at 80 percent?" Defendant responded: "Yes."

Defendant told the trial court that he had had ample time to speak with defense counsel about the charges, his potential defenses, the applicable penalties, and his constitutional rights before accepting the plea agreement. Further, he stated that he had had an opportunity to review the plea form with his counsel; that counsel had answered all of his questions about the form; and that he (defendant) understood the form. Defendant was advised of, and expressly waived his pertinent constitutional rights.

Defendant stated that he understood that he would be pleading no contest to one count of making criminal threats and admitting the truth of one prior strike allegation in exchange for a four-year sentence in state prison, comprised of a middle base term of two years, doubled pursuant to the Three Strikes law, and that he would have to serve 80 percent of his sentence.

The following exchange occurred:

"THE COURT: . . . Are you entering into this plea freely and voluntarily, because after thought and consideration, it's in your best interest to do so?

8

"[Defendant]:  Yes, ma'am.

"THE COURT:  Has anyone threatened you or anyone close to you in order for you to enter your plea of guilty or no contest?

"[Defendant]:  No.

"THE COURT:  And has anyone made any promises to you other than what I have stated here in open court in order for you to enter your plea today?

"[Defendant]:  No, ma'am."

Appellant subsequently entered his no contest plea and admitted one Three Strikes prior.[3]  Defense counsel joined in the waivers, concurred in the plea agreement, and stipulated that there was a factual basis for the plea.  The trial court found that defendant had entered his plea freely and voluntarily, and that he knew and understood the nature and consequences of the plea.  The trial court sentenced defendant in accordance with his plea agreement.

Two months later, defendant, in pro. per., filed a notice of appeal and a request for a certificate of probable cause.  The notice of appeal indicated, inter alia, that defendant intended to challenge the validity of his plea.  The request for a certificate of probable cause asserted two factual grounds for the appeal.  The first was that the victim's testimony was perjurious.  The second was that defendant's sentence constituted "cruel punishment" because defendant is a schizophrenic veteran suffering from post-traumatic stress disorder.

By minute order, the trial court granted defendant's request for a certificate of probable cause.

---

[3]  Before the trial court accepted defendant's plea, it granted the People's motion to dismiss the other sentencing allegations.

9

This defense appeal follows.

## DISCUSSION

The first issue is whether defendant's contention is properly before us.  The Attorney General urges that defendant has forfeited his right to contend that his plea was coerced because he failed to raise that claim in the trial court, either through a motion to vacate the judgment or a petition for a writ of error coram nobis.  (See *People v. Turner* (2002) 96 Cal.App.4th 1409, 1412-1413.)  Defendant counters with *People v. Williams* (1969) 269 Cal.App.2d 879 which held that because a defendant "has a constitutional right to be free of duress as he pleads to a criminal charge[,] [h]is failure to seek relief in the trial court does not accomplish a waiver of that right."  (*Id*. at p. 885.)  We do not resolve this conflict in authority, but, instead, for purposes of this appeal only, assume that the contention can be raised.  We therefore address it on its merits.

Defendant characterizes the court's participation in the discussions about disposing of the case through a plea bargain as "psychological pressure" that "rose to the level of 'coercion' [because it] exceeded permissible participation in the negotiation process."  We disagree.

"The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court.  [Citations.]  . . .  Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution.  [Citations.]  But implicit in all of this is a process of 'bargaining' between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which

10

bargaining results in an agreement between them.  [Citation.]"  (*People v. Orin* (1975) 13 Cal.3d 937, 942-943.)

"While some jurisdictions totally foreclose judicial participation in plea bargaining, California does not.  Judges can, in appropriate cases and in a reserved manner, play a useful part in that process."  (*People v. Weaver* (2004) 118 Cal.App.4th 131, 150.)  One leading practice guide explains:  "The degree and manner of the judge's participation in plea negotiation, *i.e.*, his or her role, varies among judges.  Many judges prefer to stay out of the actual negotiating process and be brought into the matter once a bargain has been attained.  Success depends entirely on the approach taken by the prosecution and defense representatives.  Some judges feel that they should actively participate in the negotiations as a mediator, as one seeking to bringing conflicting or antagonistic views together on a reasonable solution.  Here a cautious approach may achieve more.  The judge should maintain total neutrality and at the same time probe continually for a common meeting ground.  Patience, tact, and persistence pay off in an increased number of dispositions.  [¶]  One district attorney in a large county has suggested that there is a great advantage to the court's active participation, but cautions that, because of the court's power and dignity, the defendant and counsel for both sides must not be made to feel that the judge will feel unkindly toward them if negotiations fall through."  (*California Judges Benchbook, Criminal Pretrial Proceedings* (CJER 1991) § 2.11, pp. 87-88.)

"Since the matter is case-specific there is no general rule describing when court involvement has resulted in a coerced plea.  Important factors, however, include whether the court was the moving force in pressing for a guilty plea after the defendant indicated a desire to go to trial and [whether] the court during negotiations indicated conviction was a foregone conclusion.  [Citations.]" (*People v. Weaver, supra,* 118 Cal.App.4th at p. 148.)

In this case, the trial court maintained the role of neutral arbiter throughout the many discussions held over a two-day period. On several occasions, the trial court told defendant that it would call the jury if he wanted to go to trial. Although the trial court was clearly interested in facilitating a disposition of defendant's case that would be acceptable to both defendant and the People, the trial court never pressed defendant to plead guilty and never indicated to defendant that his conviction was a foregone conclusion. Instead, it explained to defendant the significance of the fact that the case had been already been tried once: the parties now knew each other's strategy. And because the prosecutor had the opportunity to speak with jury panel to learn why three jurors had voted not guilty, he was now better prepared to convince twelve jurors of defendant's guilt. In addition, the trial court explained to defendant the maximum sentence he was facing; reviewed defendant's serious criminal history set forth in the probation report; and noted that it was unlikely that if defendant were convicted, the court would grant a defense motion to dismiss the Three Strikes prior conviction allegation. All of these explanations occurred in the context of active plea bargaining between the prosecution and the defense, with multiple offers and counter offers being made. Further, pursuant to the court's suggestion, defendant conferred on several occasions with defense counsel. The trial court maintained a neutral attitude towards defendant and his chance of success at trial and did no more than attempt "'to bring conflicting or antagonistic views together on a reasonable solution.'" (*People v. Weaver, supra,* 118 Cal.App.4th at p. 148.) When defendant ultimately entered his no contest plea, he acknowledged, both verbally and in writing, that he understood the consequences of his action and that no one had threatened him. In sum, the record establishes that defendant's plea was not the result of judicial coercion but, instead, was a voluntary decision on defendant's part.

Defendant's contrary arguments are not persuasive.

12

First, defendant claims that the trial court repeatedly urged him "to accept a plea offer based upon advisement that the prosecution would win the case." The record establishes the contrary. The trial court meticulously advised defendant it did not know the details of the case; that it was not aware of the rulings made by the judge during the prior trial; that it had no idea how a second jury would decide the case; and that if defendant elected to proceed to trial, it would ensure that he received a fair trial. Nor did the trial court, as defendant now argues, assert that "victory by the prosecution [was] a foregone conclusion" but fail to advise him "that the defense also had the advantage of a first trial." Instead, the trial court told defendant that as a result of the first trial, everyone—the prosecutor, defense counsel, and defendant—knew what to expect.

In a similar vein, there is no merit to defendant's claim that he "did not fully understand the advisement of rights, waiver and plea form." To support that claim, defendant notes that when the court first asked him if he read and understood the form, he replied: "[T]o the best of my ability." But defendant essentially overlooks what followed after he gave that answer. The court responded: "Well, that's not going to work. You either read it and understood it because, if you have any questions, they have to all be answered before I can take your plea." Defendant then conferred with defense counsel. When proceedings resumed, the court asked defendant if he had "an opportunity to go over the waiver form again with [his attorney] and get all of [his] questions answered?" Defendant replied "Yes, ma'am." The court asked if he had "the opportunity with [defense counsel] to read it, and did [he] understand it?" Again, defendant replied "Yes, ma'am." Thus, the record shows that by the time defendant entered his plea, he clearly understood the consequences of his plea and the rights he would waive.

Nor is there any merit to defendant's claim that "[t]his pressure [to plead] was only increased by the Judge's continual granting of motions adverse to [him]."

13

Defendant fails to explain how any of those pretrial evidentiary rulings was an abuse of discretion and thus part of a judicial effort to coerce a plea from him. In any event, defendant's no contest plea precludes any appellate argument that the trial court's evidentiary rulings were incorrect (*People v. Shults* (1984) 151 Cal.App.3d 714, 716, 719) because his plea "admits all matters essential to the conviction."[4] (*People v. DeVaughn* (1977) 18 Cal.3d 889, 895.)

Lastly, defendant argues that "in addition to applying psychological pressure, the Court [gave] advice which [was] based upon incomplete information. Perhaps most glaringly, by advising [defendant] that he will have to serve time in prison without knowing whether or not defense counsel would move for alternative sentencing in a rehabilitation facility as permitted by [section 1170.9]. Since the Court demonstrated knowledge that [defendant] was a veteran who suffered from substance abuse and psychological problems this is particularly troubling." The argument fails. Defendant overlooks the fact that the trial court correctly informed him that a conviction in the instant case, accompanied by a true finding that he had suffered the Three Strikes prior conviction, would result in a state prison sentence. This sentence would render defendant ineligible for alternative sentencing under section 1170.9. (See §§ 1170.12, subd. (a)(2), 1170.9, subd. (b).)

---

[4]     None of the pretrial motions involved a motion to suppress evidence (§ 1538.5).

14

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.

15